UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**BRAD CULOTTA, ET AL.**

**VERSUS**

**STATE FARM FIRE AND CASUALTY COMPANY, ET AL.**

**CIVIL ACTION**

**NO. 24-755-BAJ-SDJ**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within **14 days** after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 4, 2025.

*[signature]*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BRAD CULOTTA, ET AL. | CIVIL ACTION |
| VERSUS | |
| STATE FARM FIRE AND CASUALTY COMPANY, ET AL. | NO. 24-755-BAJ-SDJ |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' Motion to Remand (R. Doc. 9). Defendants oppose (R. Doc. 12), and Plaintiffs have filed a Reply (R. Doc. 16). For the reasons discussed below, the undersigned **recommends** that the Motion to Remand be **DENIED.**

**I.    Background**

The Plaintiffs initiated this action on or about June 16, 2024, in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana.[1] The Petition alleges that in June 2023, a toilet in the Plaintiffs' home overflowed due to a burst drain line, repair of which involved significant drilling through the foundation of the home.[2] The Plaintiffs filed a home insurance claim, and their insurance agent, Steven Brooksher, and adjuster Roderick Philson, both assured them that their policy would cover the repairs.[3] After a first estimate that failed to cover the cost of the broken drain line, a second inspection was performed by Mr. Philson, and a third by adjuster Jennifer Armstrong.[4] The Petition alleges that all estimates were deficient in some way, e.g.,

---

[1] R. Doc. 1-4.
[2] *Id*. at 3.
[3] *Id*. at 4.
[4] *Id*.

failing to include the full scope of damage, or suggesting repair rather than replacement of flooring, etc.[5] The Petition alleges that Ms. Armstrong's inspection resulted in "an estimate of damages which grossly misrepresented the true nature, scope, and/or extent of the covered damages to the property caused by the water damage."[6] The final explanation of benefits accounted for $38,573.77 in repairs, while Plaintiffs' repair estimate was $118,000.00.[7] The Petition alleges that State Farm Fire & Casualty Insurance Co. claims that the policy does *not*, in fact, cover water, sewage, or drainage backup inside the home.[8] The Plaintiffs brought this suit to recover damages, naming as Defendants Armstrong, Brooksher, Philson, and State Farm, alleging that: 1) Brooksher, when selling the Plaintiffs their policy, intentionally fabricated details of the additional policy coverage included under the "Back-up of Sewer or Drain Endorsement" policy; 2) that Philson and Armstrong intentionally or negligently performed inadequate inspections and provided insufficient estimates of damage; and 3) that State Farm arbitrarily and capriciously denied further coverage and failed to timely pay the Plaintiffs' claim. The Plaintiffs' alleged damages include unpaid amounts owed under the policy, penalties for delay of payment, mental anguish, emotional distress, inconvenience, statutory penalties, and attorney's fees.[9]

The Defendants timely removed to this Court on September 10, 2024, at least one Removing Defendant having been served on August 13, 2024.[10] *See* 28 U.S.C. § 1446(b)(2)(C). Defendant State Farm invokes this Court's jurisdiction on the basis of diversity of citizenship, claiming that the individual agent, Brooksher, and adjuster Defendants Philson and Armstrong—all of the same citizenship as the Plaintiffs—are improperly joined, leaving only State Farm and

---

[5] *Id*.
[6] *Id*.
[7] *Id*. at 5.
[8] *Id*.
[9] *Id*. at 7.
[10] R. Doc. 1-1 at 1.

the Plaintiffs, citizens of Illinois and Louisiana respectively.[11] In support of its claims of improper joinder, State Farm argues that the Plaintiffs have no plausible claims against Armstrong and Philson, and that any plausible claim against Brooksher is prescribed.[12]

**II.     Legal Standards**

    **A.     Removal**

A defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States," and the amount in controversy must exceed "the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *See St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed"). "The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007). The removing party has the burden of proving federal diversity jurisdiction. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Remand is proper if, at any time, the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

---

[11] *Id*. at 4.
[12] *Id*. at 5.

### B. Improper Joinder

"Ordinarily, diversity jurisdiction requires complete diversity—if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). But, if the plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship of that defendant, dismiss them from the litigation, and exercise subject matter jurisdiction over the remaining diverse defendants. *See Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 810 n.5 (5th Cir. 2021) ("[T]he proper mechanism of handling an improperly joined party is to dismiss it, not send it to another court to decide the merits."). "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

The Fifth Circuit has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id*. at 573, quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003). In the latter situation, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*

Generally, a court should "conduct a Rule 12(b)(6)-type analysis ... to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. However, where a plaintiff "has misstated or omitted discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether a non-diverse defendant has been improperly joined. *Id*. Although the court may consider

"summary judgment-type evidence in the record," it must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff. *Travis*, 326 F.3d at 649.

The parties do not dispute that the amount in controversy exceeds $75,000. The only issue before the Court, therefore, is whether the individually named insurance agent and insurance adjusters were improperly joined to this matter to defeat diversity jurisdiction.

### III.    Summary of the Parties' Arguments

The Plaintiffs seek to remand this action back to the 19th Judicial District Court, Parish of East Baton Rouge, and for an award of attorney's fees, arguing that the Defendants have failed to meet their burden of proving that Plaintiffs improperly or fraudulently joined the non-diverse Defendants Armstrong, Brooksher, and Philson.[13] In their Motion to Remand, the Plaintiffs urge that they undoubtedly have valid causes of action against the non-diverse Defendants under Louisiana law.

The Plaintiffs argue that they clearly have a cause of action against Brooksher that was validly stated in their petition.[14] The Plaintiffs allege that Brooksher "intentionally fabricated the details of the additional policy coverage included under HO-2444.2 "Back-up of Sewer or Drain Endorsement" when selling them the policy and that he "fraudulently told [them] that all damages from the aforementioned incident was covered and later recanted his statement".[15] The Plaintiffs further argue that the claims against Brooksher are not prescribed since Brooksher's actions, omissions, and misrepresentations occurred on multiple occasions both before and after their home was damaged in June of 2023.[16] The Plaintiffs argue that they brought their claim within one year of discovery of Mr. Brooksher's "alleged act, omission or neglect," and within three years from

---

[13] R. Doc. 9-1.
[14] *Id*. at 15.
[15] *Id*.
[16] *Id*. at 17.

Mr. Brooksher's "alleged act, omission, or neglect," thus precluding application of La. R.S. § 9:5606(A).[17]

The Plaintiffs argue that they clearly have a cause of action against Armstrong and Philson as set forth in their petition. The Plaintiffs state that Armstrong and Philson, as State Farm Insurance adjusters, not only undertook a recognized duty under Louisiana law, but also committed separate affirmative acts and omissions and "personally made material misrepresentations to [the plaintiffs] on their own volition, while knowing very well that [plaintiffs] would rely on those misrepresentations".[18] The Plaintiffs allege that Armstrong and Philson "intentionally and/or negligently performed inadequate inspections of petitioners' property and provided insufficient estimates and/or opinions regarding same, resulting in a severe underpayment of the claim".[19]

The Defendants argue that the Plaintiffs have failed to state a valid cause of action against Brooksher because, although he has a duty of reasonable diligence, the Plaintiffs have not alleged facts suggesting he breached that duty.[20] The Defendants state that the Plaintiffs have not cited to any case where an insurance agent was found to have breached the agent's duty by merely speculating as to whether an event is covered under the policy.[21] The Defendants argue that the prescriptive period began no later than the date the Plaintiffs allege the policy was issued and delivered to them, November 1, 2022, and the claims brought against Brooksher on June 26, 2024, are prescribed.[22] Lastly, the Defendants argue that the Plaintiffs have no cause of action in

---

[17] *Id*. at 16.
[18] *Id*. at 18.
[19] R. Doc. 1-4 at 8.
[20] R. Doc. 12 at 5.
[21] *Id*.
[22] *Id*.

Louisiana law against Armstrong and Philson because "an insurance agent has no independent tort duty to the insured."[23]

IV. **Law and Analysis**

   A. **Improper Joinder of Insurance Agent**

The Louisiana Supreme Court has held that an insurance agent owes a duty of "reasonable diligence" to his customer, which is fulfilled when the agent procures the requested insurance. *Isidore Newman School v. J. Everett Eaves, Inc.,* 42 So.3d 352, 356 (La.2010)(citing *Roger v. Dufrene,* 613 So.2d 947, 949 (La.1993) and *Karam v. St. Paul Fire & Marine Insurance Co.,* 281 So.2d 728, 730–31 (La.1973)). An insured has a valid claim against the agent when the insured demonstrates that: "1) the insurance agent agreed to procure the insurance; 2) the agent failed to use 'reasonable diligence' in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain insurance and 3) the agent acted in such a way that the client could assume he was insured." *Isidore Newman School,* 42 So.3d at 356–57 (citing *Karam,* 281 So.2d at 730–31). In Louisiana, the scope of liability for which an insurance agent may be subject is extremely narrow. *3M Realty, LLC v. Scottsdale Ins. Co.*, No. 22-2883, 2023 WL 5478413, at *4 (E.D. La. Aug. 24, 2023). An agent's duty has not been expanded to include the obligation to advise whether the client has procured the correct amount or type of insurance coverage. *Id.* (citing *Newman*, 42 So. 3d at 357, 359). Indeed, absent a specific question, an agent has no duty to advise a client that it is underinsured; rather, it is the policy owner's responsibility to request the type and amount of insurance coverage needed, to read the policy once received, and to understand its contents. *Id.* (citing *Newman*, 42 So. 3d at 357, 359).

---

[23] R. Doc. at 7, citing *Rosinia v. Lexington Ins. Co.*, Civil Action No. 06-631, 2006 WL 3141247, at *1 (E.D. La Oct. 31, 2006).

An insurance agent's duty to use reasonable diligence includes advising the insured about those aspects of the insurance policy not within the knowledge generally held by a lay person when the agent's specific knowledge of the insured's individual situation triggers that duty to disclose. *Lightfoot v. Hartford Fire Ins. Co.*, 2010 WL 11545223, at *3 (E.D. La. Aug. 27, 2010) (citing *Isidore Newman*, 42 So. 3d at 358; *Parker v. Lexington*, 2006 WL 3328041 (E.D. La. Nov. 15, 2006)). Louisiana courts have recognized an insurance agent may have a broader duty under certain circumstances. "An insurance agent's duty can be greater than merely procuring the insurance requested, depending on what services the agent holds himself out as performing and the nature of the specific relationship and agreements between the agent and his client." *St. Charles Surgical Hosp. LLC v. HUB Int'l, Ltd.*, 535 F. Supp. 3d 588, 595 (E.D. La. 2021) (citing *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730-31 (La. 1973).

Louisiana requires insureds who wish to sue their insurance broker do so "within one year from the date that the alleged act, omission, or neglect" or within one year from the date the alleged act, omission, or neglect is discovered or should have been discovered.[29] "And because Louisiana law imposes on the insured the duty to read and know its insurance policy provisions, a claim for failure to procure coverage generally runs from receipt of a copy of the policy." *Chateau Mgmt., LLC v. Underwriters at Lloyd's, London*, 744 F. Supp. 3d 641, 649–50 (E.D. La. 2024). Here, the Plaintiffs received and, as outlined in *Isidore*, are presumed to have read the subject State Farm Insurance policy, including the HO-2444.2 endorsement, on November 1, 2022. Upon receipt of the policy, the Plaintiffs had constructive knowledge of its contents, which is sufficient as a matter of law to put the Plaintiffs on notice of any alleged act, omission, or neglect on the part of Brooksher. Therefore, the prescriptive period began no later than the date the policy was allegedly

delivered and issued to Plaintiffs, November 1, 2022. Thus, any potential claims the Plaintiffs have against Brooksher, which the Plaintiffs brought on June 26, 2024, are therefore prescribed.

The Court need not determine, however, whether State Farm has met its burden in establishing that the prescriptive or peremptive period bars the Plaintiffs' claims. Even if the Plaintiffs' claims against Brooksher are not barred by the prescriptive or peremptive period, the Plaintiffs' claims against Brooksher fail for the more basic reason that they have not raised facts under which Brooksher breached a duty owed to them under Louisiana law. A review of the allegations in the Petition and the record at the time of removal demonstrates that the Plaintiffs have not alleged a valid claim against their insurance agent, Brooksher. In the Petition, the Plaintiffs raise the following allegations against Brooksher:

> At the direction of their "independent" insurance agent Steven Brooksher, the petitioners purchased an additional policy endorsement as an added layer of protection to their insurance policy, HO-2444.2 "Back-Up of Sewer or Drain", which he alleged would cover incidents such as the one that hereinafter occurred in their home.[24]

Paragraph 11 of the Petition reads:

> A claim was filed for the broken/severed sewer line and the damage to the home and associated repair costs on July 13, 2023. Brookshear assured Culotta that not only would the broken/severed sewer line would be covered, but so too would all the repairs to the kitchen and surrounding areas.[25]

Plaintiffs allege in Paragraph 17 of the Petition that:

> Agent Steven Brooksher intentionally fabricated the details of the additional policy coverage included under HO-2444.2 "Back-up of Sewer or Drain Endorsement" to the petitioners when selling the policy. He also fraudulently told the petitioners that all damages from the aforementioned incident was covered and later recanted his statement and alleged that their only means of redress would be governed by the "Water Damage and Freezing" portion of their policy.[26]

---

[24] R. Doc. 1-1 at 6, ¶ 8.
[25] R. Doc. 1-1 at 7.
[26] R. Doc. 1-1 at 8.

Although Plaintiffs state that Brooksher "intentionally fabricated" details of the policy and "fraudently" told Plaintiffs the damages would be covered, the Petition is void of particular facts rising to fraud or misrepresentation on the part of Brooksher.[27] More importantly, the Plaintiffs have not alleged that they requested specific insurance coverage that was not ultimately obtained by Brooksher. Nor do Plaintiffs allege facts giving rise to Brooker's duty being greater than merely procuring the insurance requested. The Petition neither alleges what services Brooksher holds himself out as performing nor the nature of the specific relationship and agreements between Brooksher and the Plaintiffs.[28]

Even though Brooksher had a duty of reasonable diligence to advise the Plaintiffs regarding procuring coverage, he is not liable under Louisiana law unless he did not actually obtain coverage, failed to disclose that fact to the Plaintiffs, and the Plaintiffs assumed that they were insured. The Plaintiffs do not allege that Brooksher failed to procure the insurance coverage requested and, therefore, fail to raise a viable claim against Brooksher. After carefully examining the facts submitted to the court in the light most favorable to the Plaintiffs, the Court must conclude that there is no possibility that the Plaintiffs might prevail against Brooksher. Brooksher was improperly joined as a non-diverse defendant in this action.

### B. Improper Joinder of Insurance Adjusters

Under Louisiana law, "there is generally no cause of action against an insurance adjuster

---

[27] To state a cause of action of fraud in Louisiana, the following three elements must be alleged: "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury." *Becnel v. Grodner,* 07–1041, p. 3 (La.App. 4 Cir. 4/2/08), 982 So.2d 891, 894. Moreover, fraud must be alleged with particularity. La. C.C.P. art. 856.

[28] "An insurance agent's duty can be greater than merely procuring the insurance requested, depending on what services the agent holds himself out as performing and the nature of the specific relationship and agreements between the agent and his client." *St. Charles Surgical Hosp. LLC v. HUB Int'l, Ltd.*, 535 F. Supp. 3d 588, 595 (E.D. La. 2021) (citing *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730-31 (La. 1973).

for processing and handling an insurance claim." *See Munsterman v. State Farm Fire & Cas. Co.,* No. 06–8722, 2007 WL 29183, at *2 (E.D.La. Jan. 3, 2007) (citing *Edwards v. Allstate Prop. & Cas. Co.,* No. 04–2434, 2005 WL 2211560, at *3 (E.D.La. Jan. 27, 2005)); *see also Rich v. Bud's Boat Rentals, Inc.,* Nos. 96–3279, 97–2612. 97–2723, 1997 WL 785668 at *3 (E.D.La. Dec. 19, 2997) ("This Court has found no case imposing a duty on an independent insurance adjuster to an insured to conduct a proper investigation or to advise an insured of covered issues."); *Southern Hotels Ltd. P'ship v. Lloyd's Underwriters at London Cos.,* No. 95–2739, 1996 WL 48001, at *1 (E.D.La. Aug. 7, 1996) (granting insurance adjusters' motion to dismiss insured's claims of negligent investigation of claim on ground that insurance adjusters have no tort duty to insureds). An insurance adjuster may be held liable under Louisiana law, however, "where he has engaged in fraud toward the claimant or where he has provided the claimant false information regarding the potential success of the claim and has reason to know that the claimant will rely on that information." *Id.; see also Pellerin v. Cashway Pharmacy of Franklin, Inc.,* 396 So.2d 371, 373 (La.Ct.App. 1st Cir.1981) ("[T]here may be circumstances in which the adjuster may be said to have undertaken such a duty. Examples may include the relative education of the parties, the diligence of the claimant in seeking the facts, the actual or apparent authority of the adjuster, the content of his promises to the claimants, misrepresentation and fraud.") (citation omitted).

Courts have consistently held that a plaintiff's allegations of improper claims adjusting do not establish a claims adjuster assumed a duty to the plaintiff.[29] For example, in *Lapeyrouse v. State Farm Fire and Casualty Co.*, this Court held the plaintiffs had not demonstrated that the claims adjuster had assumed a duty to them. No. 14-52-JJB-RLB, 2014 WL 4373273, at *6 (M.D.

La. Sept. 3, 2014). In the plaintiffs' complaint, they alleged the adjuster undervalued materials and consciously disregarded estimates and engineering reports indicating the structure needed to be demolished. *Id*. This Court determined the plaintiffs' allegations did not meet the strict definition of fraud, finding "[a]t most, the [p]laintiffs allege that [the claims adjuster] ignored certain costs, that the [p]laintiffs allege are related to wind damage, and disregarded certain reports that the [p]laintiffs allege indicate that their home needed to be demolished." *Id*. "In other words," the Court summarized, "the [p]laintiffs' allege that [the] adjustment of the claim and decisions regarding the scope of the damage ... was improper." *Id*. This Court found the complaint "simply does not contain any allegation that [the adjuster] engaged in any fraud or misrepresentations that would possibly trigger an exception to the general rule that claims adjusters cannot be held personally liable in tort with regard to their adjusting of an insurance claim." *Id*. This Court further reasoned "[t]he [p]laintiffs' disagreement with [the adjuster's] method of adjusting claims and ultimate claims decision, in the absence of an allegation of fraud or misrepresentation, cannot form the basis of a claim against him under Louisiana law." *Id*.

Here, like in *Lapeyrouse,* the Plaintiffs have failed to allege any facts under which they have a reasonable possibility of recovery against Armstrong and Philson. The Plaintiffs' primary allegation against the adjusters is found in Paragraph 22 of the Petition, stating that "[a]s a result of the defendants' bad faith in fabricating policy coverage limits, rendering subpar inspection reports and delaying payment of claims, the petitioners have incurred significant expenses".[30] Paragraph 12 of the Petition reads:

> State Farm adjuster, Roderick Philson, finally visited the home on or about July 20, 2023 and informed the petitioners that the damage was covered by their policy. Additionally, petitioners received an Explanation of Building Cost Benefits six weeks after the date of loss which confirmed the adjusters statement that ALL of the brick in the foyer entry, formal dining, living room, offset kitchen, kitchen, the

---

[30] R. Doc. 1-4 at 6.

> bar, half bath, and sitting room would be removed and replaced with paver brick. It should be noted that this was incorrect and (later corrected) as the home did not have paver brick at all, but full brick throughout.[31]

Paragraph 13 of the Petition reads:

> State Farm adjuster, Roderick Philson, finally visited the home on or about July 20, 2023 and informed the petitioners that the damage was covered by their policy. Additionally, petitioners received an Explanation of Building Cost Benefits six weeks after the date of loss which confirmed the adjusters statement that ALL of the brick in the foyer entry, formal dining, living room, offset kitchen, kitchen, the bar, half bath, and sitting room would be removed and replaced with paver brick. It should be noted that this was incorrect and (later corrected) as the home did not have paver brick at all, but full brick throughout.[32]

Paragraph 14 of the Petition reads:

> A second inspection was conducted by Roderick Philson and a third inspection was conducted by Jennifer Armstrong on or about August 15, 2023. She completely changed the covered losses, which was again, wholly deficient resulting in an estimate of damages which grossly misrepresented the true nature, scope, and/or extent of the covered damages to the property caused by the water damage.[33]

Paragraph 15 states that "Adjuster Jennifer B. Armstrong also provided false information in completing the explanation of building replacement cost benefits document."[34]

To state a cause of action of fraud in Louisiana, the following three elements must be alleged: "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury." *Becnel v. Grodner,* 07–1041, p. 3 (La.App. 4 Cir. 4/2/08), 982 So.2d 891, 894. Moreover, fraud must be alleged with particularity. La. C.C.P. art. 856 (providing that "[i]n pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity."). The Petition simply does not contain any allegation that Armstrong or Philson engaged in any fraud or misrepresentations that would possibly trigger an

---

[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

exception to the general rule that claims adjusters cannot be held personally liable in tort regarding their adjusting of an insurance claim. Just as this Court reasoned in *Lapeyrouse,* the Plaintiffs' disagreement with the insurance adjusters' method of adjusting claims and the ultimate claims decision, in the absence of an allegation of fraud or misrepresentation, cannot form the basis of a claim against the insurance adjusters.

In substance, the Plaintiffs allege, like in *Lapeyrouse*, the adjustment of the claim and the decisions regarding the scope of the damage were merely *improper.* In the absence of any factual allegations in the Petition suggesting that Armstrong or Philson committed fraud or that the Plaintiffs relied to their detriment upon truthful information the adjusters had knowingly passed to them, the Court must conclude that Armstrong and Philson were improperly joined.

## V.     Conclusion and Recommendation

For the reasons set forth above,

**IT IS RECOMMENDED** that Plaintiff's Motion to Remand (R. Doc. 9) be **DENIED.**

Signed in Baton Rouge, Louisiana, on September 4, 2025.

                                                                           **SCOTT D. JOHNSON**
                                                                           **UNITED STATES MAGISTRATE JUDGE**